IN THE DISTRICT COURT OF WOODWARD COUNTY
STATE OF OKLAHOMA

MATTHEW HYMAN and JESSICA HYMAN, )
husband and wife, )
 )
      Plaintiffs, )
 )
versus )  Case No. CJ-2012-77
 )
TRAVELERS HOME AND MARINE )
INSURANCE COMPANY; PMG ONE, )
L.C. d/b/a CRDN of OKLAHOMA; and, )
PHOENIX RESTORATION SERVICES, )
L.L.C., )
 )
      Defendants. )

WOODWARD COUNTY, OKLAHOMA
FILED
AUG - 8 2012
DISTRICT COURT
JENN HOPKINS, COURT CLERK
BY _____

## PETITION

**COME NOW** the Plaintiffs, Matthew Hyman and Jessica Hyman, husband and wife and (hereinafter "Plaintiffs"), for their claims against Defendants, Travelers Home and Marine Insurance Company (hereinafter "TRAVELERS"), and PMG ONE, L.C. d/b/a CRDN of Oklahoma (hereinafter "CRDN"), and Phoenix Restoration Services, L.L.C. (hereinafter "PHOENIX"), state as follows:

1. Plaintiffs are residents of Woodward, located in Woodward County, Oklahoma.

2. Defendant TRAVELERS is a corporation incorporated under the laws of the State of Connecticut.

3. Defendant CRDN is a cleaning and restoration company incorporated under the laws of the State of Oklahoma, having its principal place of business in Oklahoma County, Oklahoma.

4. Defendant PHOENIX is a cleaning and restoration company incorporated under the laws of the State of Oklahoma, having its principal place of business in Oklahoma County,

EXHIBIT 2

Oklahoma.

5. Plaintiffs entered into a contract of insurance with Defendant TRAVELERS to provide coverage for their residence, household contents, and personal property. Plaintiffs' insured property is located in Woodward County, Oklahoma.

6. Thereafter, Defendant TRAVELERS issued the Homeowners Policy of insurance (Policy No. 985914851 633 1) to the Plaintiffs.

7. TRAVELERS represented to the Plaintiffs, directly and through its agents that it would conduct itself in accordance with Oklahoma law and would fully and fairly investigate and pay claims. Plaintiffs relied on said representations.

8. On or about the 15th day of April, 2012, Plaintiffs' property, which was insured by the subject homeowners policy of insurance, was heavily damaged as the direct result of a catastrophic tornado.

9. Consequently, Plaintiffs properly and timely submitted a claim to Defendant TRAVELERS for the property damage resulting from the April 15, 2012, tornado.

10. Defendant TRAVELERS confirmed Plaintiffs' property had in fact sustained direct physical damage as a result of catastrophic tornado which occurred on or about the 15th day of April, 2012, and that said loss was covered under the terms and conditions of Plaintiffs' homeowners policy with TRAVELERS.

11. Defendant TRAVELERS chose to contact, refer and direct Defendant CRDN to clean and restore Plaintiffs' personal property rather than replacing Plaintiffs' property.

12. Defendant CRDN required Plaintiffs to execute a contract with CRDN and authorize CRDN to collect payment for its services directly from Defendant TRAVELERS.

EXHIBIT 2

13. Defendant TRAVELERS chose to also contact, refer, and direct PHOENIX to clean and restore Plaintiffs' personal property rather than replacing Plaintiffs' property.

14. Defendant PHOENIX required Plaintiffs to execute a contract with PHOENIX and authorize PHOENIX to collect payment for its services directly from Defendant TRAVELERS.

15. Subsequently, Defendant TRAVELERS paid portions of Plaintiffs' claim based on its purported investigation and estimate.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

16. Plaintiffs entered into a contract of insurance with Defendant TRAVELERS to provide coverage for their dwelling and personal property. The Homeowners Policy with Defendant TRAVELERS was in full force and effect at all material times hereto.

17. Plaintiffs provided proper and timely notice to Defendant TRAVELERS of their claims arising from the catastrophic tornado of April 15, 2012.

18. Plaintiffs have in all material ways, complied with the terms and conditions of the policy.

19. Defendant TRAVELERS, however, has breached its contractual obligations under the terms and conditions of the insurance contract with Plaintiffs by failing to pay Plaintiffs all benefits to which they are entitled under the terms and conditions of the policy.

20. As a result of Defendant TRAVELERS's breach of contract and other wrongful conduct, Plaintiffs have sustained financial losses, mental and emotional distress and have been damaged in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs and interest.

EXHIBIT 2

21. The conduct of Defendant TRAVELERS was intentional, willful, malicious and in reckless disregard of the rights of the Plaintiffs, and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

## SECOND CAUSE OF ACTION
### BAD FAITH

Plaintiffs adopt and re-plead paragraphs 1 through 21 above, and for their claim against Defendant TRAVELERS further allege as follows:

22. Defendant TRAVELERS owed a duty to Plaintiffs to deal fairly and in good faith.

23. Defendant TRAVELERS breached its duty to deal fairly and in good faith by engaging in the following acts and omissions:

   a. failing to pay the full and fair amount for the property damage sustained by Plaintiffs from the April 15, 2012, tornado in accordance with the terms and conditions of their insurance policy;

   b. failing to pay all additional coverages due and owing to Plaintiffs under the terms and conditions of their homeowners policy of insurance, thereby unfairly and without valid basis, reducing the fair amount of Plaintiffs' claim;

   c. purposefully, wrongfully and repeatedly withholding pertinent benefits, coverages and other provisions due Plaintiffs under the terms and conditions of their insurance policy in violation of the Unfair Claims Settlement Practices Act, 36 O.S. §§1250.1-1250.16;

   d. purposefully, wrongfully and repeatedly failing to communicate all coverages and benefits applicable to Plaintiffs' claim;

EXHIBIT 2

  e.  forcing Plaintiffs to retain counsel to recover insurance benefits to which they were entitled under the terms and conditions of the insurance contract;

  f.  failing to conduct a fair and objective investigation of the damage to Plaintiffs' home; and

  g.  intentionally engaging in outcome-oriented investigation.

24. Defendant TRAVELERS' obligations arise from both the express written terms of the policy and the Oklahoma Insurance Code. TRAVELERS' failure to implement and/or follow Oklahoma's statutory Insurance Code constitutes bad faith.

25. The conduct of Defendant TRAVELERS, as described above, constitutes bad faith and is a material breach of the terms and conditions of the insurance contract between the parties.

26. As a direct result of Defendant TRAVELERS' bad faith, Plaintiffs' claim was unnecessarily delayed, inadequately investigated, and wrongly underpaid. Said actions resulted in additional profits and financial windfall for Defendant TRAVELERS.

27. As a result of Defendant TRAVELERS' conduct, Plaintiffs have sustained financial losses, mental and emotional distress and have been damaged in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs and interest.

28. Defendant TRAVELERS' conduct was intentional, willful, malicious and in reckless disregard of the rights of Plaintiffs, and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

29. Plaintiffs further allege Defendant TRAVELERS enjoyed increased financial benefits and ill-gotten gains as a direct result of the wrongful conduct described above herein, which resulted in the injury to Plaintiffs.

EXHIBIT 2

## THIRD CAUSE OF ACTION
## NEGLIGENT UNDERWRITING

Plaintiffs adopt and re-plead paragraphs 1 through 29 above, and for their additional claims against Defendant TRAVELERS do hereby and further allege as follows:

30. At the time the policy was sold, Defendants were obligated to utilize reasonable valuation methodology to determine the costs which Defendants considered necessary to cover the replacement cost of Plaintiffs' dwelling. Defendants were then prohibited from writing more insurance than they considered necessary to cover the replacement cost of Plaintiffs' dwelling as determined at the time the subject policy was written.

31. Thereafter, Defendant owed a duty to Plaintiffs to exercise good faith, reasonable care, skill and expertise in the underwriting analysis to ensure the insurance policy provided appropriate and adequate coverage once the insured-insurer relationship was established.

32. Defendant breached their duties to Plaintiffs to exercise good faith, reasonable care, skill and expertise in failing to establish an accurate and consistent methodology for calculating the replacement cost of Plaintiffs' dwelling.

33. Defendant's breach resulted in both inconsistent and inaccurate replacement cost valuations resulting in Plaintiffs having policy limits and corresponding premiums which did not accurately reflect the risks insured.

34. Defendants further breached their duties by automatically applying TRAVELERS's yearly inflationary adjustments which were used to automatically increase Plaintiffs' policy limits and premiums, without any regard to whether or not the provision was necessary considering the

dwelling's current valuation.

35. The conduct and inconsistencies referenced herein violates Defendant's duties of good faith dealing implicit in the contract of insurance with Plaintiffs and other Oklahoma policyholders.

36. Defendant's obligations arise from both the express written terms of the policy and the Oklahoma Insurance Code. Defendants' failure to implement and/or follow Oklahoma's statutory Insurance Code also constitutes bad faith. Defendants' conduct referenced herein constitutes a breach of this duty of good faith which is inherent in all contracts within the State Of Oklahoma.

37. Defendant's failure to procure the proper insurance product morally and legally requires it be held to a duty of reasonable care, and that the burden of the resulting liability for the breach of this duty be imposed upon it. This duty exists due to the forseeability of the harm to Plaintiffs which could occur as a result of failure to underwrite or procure adequate and appropriate insurance; the procurement of inadequate and improper insurance is the direct cause of the harm and injury suffered by Plaintiffs; and the moral blame for the failure to procure and underwrite the correct policy lies with the Defendant. Further, the burden on the Defendant of imposing a duty to exercise care in procuring and underwriting the correct policy for the needs of the insured (with resulting liability for breach) is minimal, given the purported expertise of the Defendant, and its' representations that it is an expert in the field of providing insurance coverage to the general public, such as Plaintiffs.

38. Plaintiffs relied on the Defendant to conduct an appropriate underwriting analysis to ensure and maintain an insurance policy which provided appropriate and adequate coverage.

EXHIBIT 2

39. The Defendant breached its' duty owed to Plaintiffs by failing to conduct an appropriate underwriting analysis which resulted in issuing a policy of insurance to Plaintiffs that did not provide appropriate and adequate coverage to Plaintiffs.

40. As a result of the Defendant's conduct, Plaintiffs have sustained financial losses, mental and emotional distress and have been damaged in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs and interest.

41. The conduct of Defendant was intentional, willful, malicious and in reckless disregard of the rights of the Plaintiffs, and/or was grossly negligent, and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

### FOURTH CAUSE OF ACTION
### BREACH OF CONTRACT

Plaintiffs adopt and re-plead paragraphs 1 through 41 above, and for their additional claims against Defendants CRDN and PHOENIX do hereby and further allege as follows:

42. On or about April 21, 2012, Plaintiffs entered into a contract with Defendant CRDN to provide cleaning and restoration services relating to damages suffered to their property from the April 15, 2012, tornado.

43. Defendant CRDN was selected and referred by Defendant TRAVELERS to assist in Plaintiffs' personal property claims arising from the April 15, 20102, tornado.

44. On or about April 24, 2012, Plaintiffs entered into a contract with Defendant PHOENIX to provide cleaning and restoration services relating to damages suffered to their property from the April 15, 2012, tornado.

45. Defendant PHOENIX was selected and referred by Defendant TRAVELERS to

EXHIBIT 2

assist in Plaintiffs' personal property claims arising from the April 15, 20102, tornado.

46. Defendants CRDN and PHOENIX each owed a duty to Plaintiffs to exercise good faith, reasonable care, skill and expertise in the restoration services which they provided Plaintiffs pursuant to their respective contracts.

47. Plaintiffs have in all material ways, complied with the terms and conditions of the policy.

48. Defendants CRDN and PHOENIX, however, have each breached their contractual obligations with Plaintiffs by failing to exercise good faith, reasonable care, skill and expertise in the restoration services which they provided Plaintiffs relating to the April 15, 2012, catastrophe.

49. As a result of the breach of contract and other wrongful conduct of Defendants CRDN and PHOENIX, Plaintiffs have sustained financial losses, mental and emotional distress and have been damaged in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs and interest.

### FIFTH CAUSE OF ACTION
### FRAUD & DECEIT

Plaintiffs adopt and re-plead paragraphs 1 through 49 above, and for their claim against Defendants TRAVELERS, CRDN and PHOENIX further allege as follows:

50. Defendant TRAVELERS chose to contact, refer and direct Defendants CRDN and PHOENIX to assist in Plaintiffs' personal property claim.

51. Defendants TRAVELERS, CRDN and PHOENIX, represented to Plaintiffs each were necessary to the claims process, and would conduct a fair, reasonable and objective inspection of their personal property.

EXHIBIT 2

52. Defendants' representations were material to Plaintiffs' decision to enter into contractual relationships with Defendants CRDN and PHOENIX.

53. Defendants made the foregoing representations to Plaintiffs knowing the same were false. Defendants knew from their prior business relationships that the performance of CRDN and PHOENIX was measured by the amount of money each saved Defendant TRAVELERS. Contrary to the representations made to Plaintiffs to induce them to retain their services, all Defendants knew the true purpose of Defendants CRDN and PHOENIX being involved was to ensure Plaintiffs' items were "cleaned" instead of "replaced" despite Plaintiffs having purchased the more expensive Replacement Cost policy. Defendants knew their investigations would be neither fair, reasonable, nor objective but would instead be outcome oriented designed to reduce the amount which Defendant TRAVELERS paid out to Plaintiffs for their claims.

54. Defendants represented to Plaintiffs that CRDN and PHOENIX were each necessary to the claims process, and would conduct a fair, reasonable and objective inspection of their personal property with the intention that it should be acted upon by Plaintiffs.

55. Plaintiffs acted in reliance upon each Defendants' representations and believing Defendants CRDN and PHOENIX were necessary to the claims process and that each would in fact conduct a fair, reasonable and objective investigation of their personal property damaged and destroyed by the April 15, 2012, catastrophic tornado, retained their services.

56. Plaintiffs suffered injury as a direct result of the material representations made by Defendants herein. Instead of being replaced as provided for in the insurance contract, Defendants' focus and measure of success was the amount of monies saved by cleaning Plaintiffs' personal property instead. Plaintiffs were the victims of outcome oriented "inspections" designed not to

EXHIBIT 2

place Plaintiffs back to their pre-loss position but instead pay them less than what they were entitled to.

57.  As a direct result of Defendants' fraudulent schemes and deceit, Plaintiffs' claim was unnecessarily delayed, inadequately investigated, and wrongly underpaid. Said actions resulted in additional profits and financial windfall for Defendants.

58.  As a result of Defendants' conduct, Plaintiffs have sustained financial losses, mental and emotional distress and have been damaged in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of attorneys' fees, costs and interest.

59.  Defendants' conduct was intentional, willful, malicious and in reckless disregard of the rights of Plaintiffs, and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

60.  Plaintiffs further allege Defendants enjoyed increased financial benefits and ill gotten gains as a direct result of the wrongful conduct described above herein, which resulted in the injury to Plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE**, premises considered, Plaintiffs pray for judgment in their favor and against Defendants, Travelers Home and Marine Insurance Company and PMG One, L.C. d/b/a CRDN of Oklahoma, and Phoenix Restoration Services, L.L.C. for:

a)  Payment for all contractual benefits for all coverages afforded to Plaintiffs under the subject homeowners policy of insurance for damage to their property caused by the April 15, 2012, tornado, with interest on all amounts due;

b)  Compensatory damages for intentional infliction of emotional distress and mental

EXHIBIT 2

pain and suffering;

c) Disgorgement of the increased financial benefits derived by any and/or all of the Defendants as a direct result of the Defendants' wrongful conduct;

d) An Order enjoining Defendants from issuing policies of insurance in Oklahoma without an accurate and consistent methodology for calculating the fair value of property;

e) An Order enjoining Defendants from issuing policies in Oklahoma with limits and premiums which do not accurately reflect the risks;

f) An Order enjoining Defendants from annually increasing policy limits and premiums automatically via its annual inflation adjustment when such increases are unnecessary, illusory, and do not accurately reflect the risks;

g) Actual and punitive damages each in an amount in excess of $75,000.00; and,

h) Prejudgment interests, costs and attorneys' fees.

Respectfully submitted,

_____
JEFF D. MARR, OBA No. 16080
MARR LAW FIRM
4301 Southwest Third Street
Suite 110
Oklahoma City, Oklahoma 73108
Telephone: (405) 236-8000
Facsimile: (405) 236-8025
Email: jeffdmarr@marrlawfirm.com
*Attorney for Plaintiffs*

**ATTORNEYS' LIEN CLAIMED**
**JURY TRIAL DEMANDED**